## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLYN JUREWICZ<br>2195 Oakridge Road<br>Mansfield, MO 65704<br><br>THE HUNTE CORPORATION<br>121 Roy Hill Blvd.<br>Goodman, MO 64843,<br><br>MISSOURI PET BREEDERS<br>ASSOCIATION<br>2195 Oak Ridge Road<br>Mansfield, MO 65704<br><br>    Plaintiffs,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>    Defendant. | Civil Action No.:_____ |

## COMPLAINT
## ("REVERSE FOIA")

Plaintiffs, Carolyn Jurewicz, The Hunte Corporation, and the Missouri Pet Breeders Association, (collectively, "Plaintiffs") by and through their undersigned counsel, bring this action against defendant, United States Department of Agriculture ("USDA" or "Defendant"), and allege as follows:

## INTRODUCTION

1.      This is a Reverse-FOIA case under the Administrative Procedure Act ("APA") to set aside a determination by the United States Department of Agriculture ("USDA") that information plaintiffs were required to submit to USDA under USDA regulations is not exempt from disclosure under FOIA.  USDA initially determined that the requested information was exempt under FOIA Exemptions 4 (confidential business information) and/or 6 (private information) and refused to produce it.  The party that requested the information then administratively appealed that determination to the USDA.  Thereafter, USDA asked submitters of information to comment on whether the information was exempt from disclosure, but only under FOIA Exemption 4.  Remarkably, USDA did not enclose (or even disclose) its original decisions to the submitters.  Nor did USDA enclose the record from the requester's administrative appeal or any results from same.  In fact, USDA did not even disclose the existence of the requester's appeal.

2.      USDA's decision to release the information at issue is arbitrary and capricious and/or otherwise contrary to law under Section 706 of the APA, 5 U.S.C. § 706 because, *inter alia*, USDA (a) did not comply with E.O. 12,600 in reaching the decision, (b) did not comply with its own FOIA regulations, (c) did not address and respond to each argument made by commenters for withholding the information, (d) relied on information outside of the administrative record, (e) did not otherwise provide sufficient notice and opportunity to comment to plaintiffs, and (f) reached conclusions and made determinations that are unsupported by, and/or are contrary to, the record.

3.      USDA's decision must be set aside and the matter remanded to USDA for further proceedings.  Moreover, unless the conclusion of this or any related litigation results in an order

of release, none of the disputed information should be released by USDA pursuant to USDA's existing agreement with plaintiffs.

## PARTIES

4.       Plaintiff Carolyn Jurewicz is a resident of the State of Missouri with a business address located at 2195 Oak Ridge Road, Mansfield, MO 65704. As explained more fully herein, Ms. Jurewicz is a dog breeder and a USDA-licensed Class "A" dealer under the Animal Welfare Act ("AWA").    In compliance with USDA regulations, Ms. Jurewicz submitted confidential business and private information to USDA that is exempt from disclosure under FOIA Exemptions 4 and 6.   The USDA FOIA decision at issue threatens to disclose this information.   Release of this information would cause Ms. Jurewicz to suffer substantial competitive harm as well as a clearly unwarranted invasion of her privacy.

5.       Plaintiff The Hunte Corporation ("Hunte") is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 121 Roy Hill Blvd, Goodman, MO 64843. As explained more fully herein, Hunte is a USDA-licensed Class "B" dealer under AWA.    In compliance with USDA regulations, Hunte submitted confidential business and private information to USDA that is exempt from disclosure under FOIA Exemptions 4 and 6.   The USDA FOIA decision at issue threatens to disclose this information. Release of this information would cause Hunte to suffer substantial competitive harm as well as a clearly unwarranted invasion of its privacy.

6.       Plaintiff the Missouri Pet Breeders Association ("MPBA") is a non-profit corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 2195 Oak Ridge Road, Mansfield, MO 65704. MPBA is the trade association for dog breeders in Missouri. Approximately eighty percent (80%) of its members

3

are USDA-licensed Class "A" dog breeders residing in Missouri. In compliance with USDA regulations, these members submitted confidential business and private information to USDA that is exempt from disclosure under FOIA Exemptions 4 and 6. The USDA FOIA decision at issue threatens to disclose this information. Release of this information would cause MPBA's members to suffer substantial competitive harm as well as a clearly unwarranted invasion of their privacy.

7.    Defendant USDA is an agency of the United States government. USDA has responsibility for, *inter alia*, implementation of the Animal Welfare Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act (5 U.S.C. §§ 701, *et seq.*), FOIA (5 U.S.C. §§ 552, *et seq.*) and the Trade Secrets Act (18 U.S.C. § 1905).

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e).

## STATEMENT OF FACTS

### The Animal Welfare Act and Implementing USDA Regulations

10.    The Animal Welfare Act ("AWA") requires dog breeders that fall within the definition of "dealer" under the AWA to apply for and obtain a license from the USDA. Specifically, the AWA provides that:

> No dealer … shall sell or offer to sell or transport or offer for transportation, in commerce, to any research facility or for exhibition or for use as a pet any animal, or buy, sell, offer to buy or sell, transport or offer for transportation, in commerce, to or from another dealer or exhibitor under this chapter any animals, unless and until such dealer or exhibitor shall have obtained a license from the Secretary and such license shall not have been suspended or revoked.

4

7 U.S.C. § 2134.

11.     The AWA, in turn, defines "dealer", in relevant part, as

> any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog ... for research, teaching, exhibition, or use as a pet, or (2) any dog for hunting, security, or breeding purposes....

7 U.S.C. § 2132(f). Excluded from the definition of "dealer" are certain retail pet stores and "any person who does not sell, or negotiate the purchase or sale of any ... dog ... and who derives no more than $500 gross income from the sale of other animals during any calendar year." *Id.* at § 2132(f)(i), (ii).

12.     The USDA has promulgated regulations governing the issuance of licenses to dealers under the AWA. These regulations include two classes of dealers, defined as "licensees" in the regulations. A Class "A" licensee is defined, in relevant part, as a "breeder" and

> means a person ... whose business involving animals consists only of animals that are bred and raised on the premises in a closed or stable colony and those animals acquired for the sole purpose of maintaining or enhancing the breeding colony.

9 C.F.R. § 1.1. A Class "B" licensee is defined, in relevant part, as "a person ... whose business includes the purchase and/or resale of any animal" and "includes brokers, and operators of an auction sale, as such individuals negotiate or arrange for the purchase, sale, or transport of animals in commerce." *Id.*

13.     Licenses issued by USDA to dealers under the AWA are valid for one year from the date of issuance. 9 C.F.R. § 2.5(b). To obtain renewal of a license, a dealer "must file an application for a license renewal and an annual report form (APHIS Form 7003) ... and pay the required annual license fee." *Id.* "Failure to comply with the annual reporting requirements or

pay the required annual license fee on or before the expiration date of the license will result in automatic termination of the license." *Id.*

      14.    USDA regulations require an Annual Report and renewal application to

> set forth…the dollar amount of business, from the sale of animals, upon which the license fee is based, directly or through an auction sale, to research facilities, dealers, exhibitors, retail pet stores, and persons for use as pets, by the licensee during the preceding business year (calendar or fiscal), and any other information as may be required thereon.

9 C.F.R. § 2.7(b). The Annual Report and renewal application must be filed within thirty (30) days prior to the expiration date of the dealer's license. *Id.* § 2.7(a).

      15.    APHIS Form 7003 is the form both Class "A" and "B" dealers are required to complete and submit to USDA in order to comply with the above Annual Reporting requirements to renew their licenses. A true and correct copy of APHIS Form 7003 is attached hereto as Exhibit "A." In Section 8 of the form, dealers are required to disclose the total number of dogs purchased in the last business year, total number of animals sold in the last business year, the total gross dollar amount derived from regulated activities (including, but not limited to, sales, booking fees, and commissions), and the dollar amount on which the renewal fee is based. *See* Exhibit "A." In Section 10 of the form, dealers are required to provide their signature. *Id.*

      16.    The amount of the annual license renewal fee that a dealer is required to pay is dependent upon the information provided by the dealer in APHIS Form 7003. For a Class "A" dealer, the annual license renewal fee is

> based on 50 percent of the total gross amount, expressed in dollars, derived from the sale of animals to research facilities, dealers, exhibitors, retail pet stores, and persons for use as pets, directly or through an auction sale, by the dealer or applicant during his or her preceding business year (calendar or fiscal) in the case of a person who operated during such a year.

9 C.F.R. § 2.6(a).  For a Class "B" dealer, the annual license renewal fee is

> established by calculating the total amount received from the sale
> of animals to research facilities, dealers, exhibitors, retail pet
> stores, and persons for use as pets, directly or through an auction
> sale, during the preceding business year (calendar or fiscal) less the
> amount paid for the animals by the dealer or applicant. This net
> difference, exclusive of other costs, shall be the figure used to
> determine the license fee of a Class "B" dealer.

9 C.F.R. § 2.6(b).

## Plaintiffs Complied with USDA Regulations

17.    As required by USDA regulations, plaintiff Jurewicz completed and submitted APHIS Form 7003 for the past several years.  The financial information required to be disclosed in the form constitutes highly confidential business information as well as private information. Ms. Jurewicz opposes any public disclosure of this information.

18.    Similarly, Hunte has completed and submitted APHIS Form 7003 for the past several years.  The financial information required to be disclosed in the form constitutes  highly confidential business information as well as private information.  Hunte opposes any public disclosure of this information.

19.    MPBA's USDA-licensed members have also completed and submitted APHIS Form 7003 for the past several years.  MPBA has been informed by its members that they consider the financial information required to be disclosed in the form to constitute highly confidential business information as well as private information.  The financial information required to be disclosed in the form constitutes highly confidential business information as well as private information.  MPBA has been informed by its members that they oppose any public disclosure of this information.

## FOIA Request for Class "B" Dealers' License Renewals

20.     The Humane Society of the United States ("HSUS") submitted a FOIA request to USDA on or about October 5, 2009 "for copies of all records related to license renewal applications (APHIS Form 7003), including but not limited to the actual renewal applications" submitted to USDA by various dealers, including Hunte ("HSUS' Dealer Request"). *See* Complaint for Declaratory and Injunctive Relief, *The Humane Society of the United States v. United States Department of Agriculture,* Case No. 1:10-cv-01683-RMU (D.D.C.) ("HSUS Complaint") ¶ 21, attached hereto as Exhibit "B."

21.     On or about January 8, 2010, the USDA sent HSUS a final response to HSUS' Dealer Request releasing sixty-six (66) pages of responsive documents. *See* HSUS Complaint ¶ 22 (Ex. "B"). According to HSUS, the USDA redacted Lines A-C in Section 8 (or 10) on each license renewal application form, citing FOIA Exemption 4 on thirteen (13) occasions and citing FOIA Exemption 6 on four (4) occasions. *Id.*

22.     On information and belief, plaintiff Hunte's USDA license renewal applications were included within the sixty-six (66) pages of responsive documents released by USDA to HSUS on or about January 8, 2010.

23.     According to HSUS, on or about March 25, 2010, it submitted an administrative appeal to USDA related to HSUS' Dealer Request. *See* HSUS Complaint ¶ 25 (Ex. "B"). According to HSUS, its appeal

> argued that Exemption 4 does not apply to the dealers' gross dollar amount or bought and sold numbers as disclosure of the information would not impact the likelihood that the government would be able to obtain this information in the future since the USDA requires licensees to submit this information as a condition of license renewal.

HSUS Complaint ¶ 25 (Ex. "B"). HSUS also asserts that its appeal "argued that disclosure of this information would not cause substantial harm to the competitive position of the licensed

8

dealer, as the information is too limited to enable competitors to successfully undermine the dealer." *Id.* HSUS also contends that its appeal "argued that Exemption 6 does not apply to the gross dollar amount or bought and sold numbers, as the release of such information would not cause an unwarranted invasion of the intimate details of personal privacy." *Id.*

24.    According to HSUS, on or about April 6, 2010, "a representative of USDA contacted HSUS by phone and indicated that the agency had made a mistake in its response" to HSUS' Dealer Request "and that the agency intended to withhold information" in Section 8 (or 10) on each form pursuant to Exemption 6, and not Exemption 4.  HSUS Complaint ¶ 26 (Ex. "B").

25.    HSUS also contends that, on or about April 7, 2010, USDA sent HSUS a "'subsequent response'" to HSUS' Dealer Request "that included the same license renewal application forms released on January 8, 2010, but redacted" Section 8 (or 10), Lines A-D, citing FOIA Exemption 6.  HSUS Complaint ¶ 27 (Ex. "B").

## The Humane Society's FOIA Request for Ms. Jurewicz's and Other MPBA Members License Renewals

26.    On or about December 15, 2009, HSUS submitted a FOIA request to USDA "for copies of all applications for license and annual reports (APHIS Form 7003) pursuant to 9 C.F.R. § 2.7, submitted by all dog breeders and dealers in the State of Missouri for the most recent year available" ("HSUS' Breeder Request").  HSUS Complaint ¶ 23 (Ex. "B").

27.    According to HSUS, on or about March 2, 2010, USDA sent HSUS a "partial response" to HSUS' Breeder Request releasing two hundred (200) pages of license renewal applications.  HSUS Complaint ¶ 24 (Ex. "B").  HSUS contends that on each form, USDA redacted Lines A-D in Section 8 (or 10), "citing Exemption 6 all but seven times, in which cases the agency cited Exemption 4." *Id.*

28.     According to HSUS, on or about April 6, 2010, a representative of USDA contacted HSUS by phone and "stated that the agency had mistakenly released the wrong set of documents responsive to" HSUS' Breeder Request. *See* HSUS Complaint ¶ 26 (Ex. "B").

29.     HSUS also contends that, on or about April 8, 2010, USDA sent HSUS a "'subsequent partial response'" to HSUS' Breeder Request that included two hundred seventy-one (271) pages of responsive documents. *See* HSUS Complaint ¶ 28 (Ex. "B"). According to HSUS, USDA redacted Lines A-D in Section 8 (or 10), "citing Exemption 6 all but five times, in which cases the agency cited Exemption 4." *Id.*

30.     According to HSUS, on or about April 20, 2010, USDA sent HSUS a third partial response to HSUS' Breeder Request, "indicating that on April 19, 2010 the agency sent HSUS a second partial response." *See* HSUS Complaint ¶ 29 (Ex. "B"). HSUS contends that it never received this information. *Id.* However, HSUS asserts that USDA's April 20, 2010 response "did include 331 pages of license renewal applications, and on each form USDA redacted Lines A-D" in Section 8 (or 10) "based on Exemption 6." *Id.*

31.     On information and belief, USDA's responses to HSUS' Breeder Request included license renewals submitted by USDA-licensed dog breeders in Missouri, including Ms. Jurewicz and MBPA members.

## HSUS's Administrative Appeal and Lawsuit

32.     According to HSUS, it submitted an administrative appeal to USDA on or about May 6, 2010, challenging USDA's redactions on documents it released in response to HSUS' Dealer and Breeder Requests as well as in response to a third, related FOIA request made by HSUS. *See* HSUS Complaint ¶ 30 (Ex. "B"). HSUS asserts that, in its appeal(s), it argued that neither Exemption 4 nor Exemption 6 applies to the redacted information and, therefore, the

information must be released.  *Id.*  In the appeal, HSUS made arguments similar to those advanced in its prior March 25, 2010 appeals.  *Id.*  HSUS also purportedly advanced a new argument that

> Exemption 6 does not apply to the information because the public interest in disclosure of that information clearly outweighs whatever privacy interest may exist, as the information is essential for monitoring the scope of regulated activities and assessing USDA's enforcement of the AWA.

*Id.*

33.     On information and belief, while its administrative appeal was still pending at USDA, HSUS filed a lawsuit against USDA in this Court under FOIA seeking to compel production of the redacted information.  *See generally* HSUS' Complaint (Ex. "B").

### USDA's November 22, 2010 Letter to Breeders or Dealers

34.     On or about November 22, 2010, USDA sent a letter to Breeders and Dealers ("the USDA November Letter").  A true and correct copy of the USDA November Letter is attached as Exhibit "C."

35.     USDA indicated that "[t]his letter serves as notice to your company about Freedom of Information Act (FOIA) requests that are at issue in *Humane Society of the United States v. U.S. Department of Agriculture,* Civil Action No. 1683-RMU (D.D.C.)."  USDA November Letter, at 1 (Ex. "C").

36.     The USDA November Letter also indicated that

> The Humane Society of the United States ("Plaintiff") requested copies of Form 7003s of many licensed breeders and dealers, which were submitted to the United States Department of Agriculture ("USDA"), Animal and Plant Health Inspection Service ("APHIS").  Plaintiff requested the Form 7003 for about 30 individual dealers and the forms for dealers and breeders in Missouri.  On October 4, 2010, Plaintiff filed the above-referenced lawsuit in order to gain access to these forms.

USDA November Letter, at 1 (Ex. "C").

37.     USDA also informed dealers and breeders that "[y]our company's Form 7003 is included among the forms requested by Plaintiff." USDA November Letter, at 1 (Ex. "C"). USDA indicated that: "This notice seeks your company's position on whether the enclosed form or forms contain confidential business information ("CBI") and are exempt from disclosure under the FOIA." *Id.*

38.     The USDA November Letter did not enclose HSUS' Dealer Request or Breeder Request.

39.     The USDA November Letter also did not enclose its original decisions holding that the information in Section 8 (or 10) are exempt from disclosure pursuant to FOIA Exemptions 4 and/or 6. Nor did the USDA November Letter otherwise inform breeders and dealers of those decisions.

40.     The USDA November Letter also did not enclose any documents submitted in connection with HSUS' administrative appeal(s) of USDA's original decisions to withhold the information in Section 8 (or 10) pursuant to FOIA Exemptions 4 and/or 6. Nor did the USDA November Letter otherwise inform breeders or dealers that HSUS had appealed USDA's original decision or provide the results, if any, or the status of that proceeding.

41.     Instead, the USDA November Letter, relying on Executive Order 12,600 ("E.O. 12,600") and USDA's own FOIA regulations (7 C.F.R. § 1.12) stated as follows:

> A closer review of the Form 7003 reveals that they [sic] may contain CBI that was provided by licensed breeders and dealers to APHIS. Whenever a USDA agency cannot readily determine whether the responsive information contains CBI, the agency must obtain and consider the views of the company that submitted the information. In addition, the agency must provide the company with an opportunity to object to any decision to disclose the information. *See* E.O. 12,600; 7 C.F.R. ¶ 1.12.

USDA Letter, at 1 (Ex. "C").

42.     The USDA November Letter noted further that

> The FOIA requests at issue in this litigation have not been resolved. APHIS wishes to consider your company's views on whether any or all of the information contained on the enclosed Form 7003 should be considered CBI or is otherwise protected from disclosure under the FOIA.

USDA November Letter, at 1 (Ex. "C").

43.     USDA also indicated that

> Your response should explain fully all grounds which your company opposes the release of any of the information contained on the Form 7003. If your company maintains that revealing any of the information from the Form 7003 is likely to cause substantial harm to its competitive position, it must explain item-by-item why disclosure would cause such harm with as much specificity as possible. In other words, explain how release of this information would cause **substantial competitive harm to your business**. If your company does not object to the disclosure of its Form 7003, please notify APHIS of this position in writing.

USDA November Letter, at 1 (Ex. "C") (emphasis original).

44.     The USDA November Letter also indicated that

> If your company objects to the release of the enclosed form, APHIS will consider your company's response carefully in making a final determination. Should APHIS decide to release any of the information from the Form 7003, we will advise your company in writing before such disclosure takes place in order to provide your company with an opportunity to seek judicial intervention.

USDA November Letter, at 1 (Ex. "C") (emphasis original).

45.     USDA gave breeders and dealers until December 10, 2010, a little over two (2) weeks, to respond, and indicated that USDA would not "grant extensions to respond to this notice." USDA November Letter, at 1 (Ex. "C").

**Plaintiffs Respond to USDA's November Letter**

46.     Plaintiff Ms. Jurewicz received a copy of the USDA November Letter.  The USDA November Letter was the first notice USDA provided to Ms. Jurewicz regarding HSUS' Breeder Request.

47.     Plaintiff Hunte received a copy of the USDA November Letter.  The USDA November Letter was the first notice USDA provided to Hunte regarding HSUS' Dealer Request.

48.     Plaintiff MPBA received notice from nearly all of its USDA-licensed members that they had received the USDA November Letter.  On information and belief, the USDA November Letter was the first notice USDA provided to USDA-licensed members of MPBA regarding HSUS' Breeder Request.

49.     Plaintiff Ms. Jurewicz submitted comments to USDA objecting to the disclosure of the redacted information.

50.     Plaintiff Hunte also submitted comments to USDA objecting to disclosure of the redacted information.

51.     Several hundred MPBA members also submitted comments objecting to the disclosure of the redacted information.

**USDA's March 17, 2011 Letter**

52.     On or about March 17, 2011, USDA sent a letter to dealers and breeders (the "USDA March Letter").  A true and correct copy of the USDA March Letter is attached hereto as Exhibit "D."

14

53.     The USDA March Letter indicated that USDA had made a prior determination regarding HSUS' Dealer and Breeder Requests and that HSUS had appealed those determinations. Specifically, USDA stated that

> After first receiving the FOIA requests, APHIS initially withheld certain information because it determined that the information was confidential business information ("CBI") and was therefore protected from release by FOIA exemptions 4 and 6, 5 U.S.C. §§ 552(b)(4), (6). The Humane Society appealed these determinations, and APHIS then solicited your views and the views of other licensees ("business submitters") in accordance with Executive Order 12,600 and USDA regulations, 7 C.F.R. § 1.12

USDA March Letter, at 1 (Ex. "D").

54.     The USDA March Letter went on to indicate that "[f]or the reasons explained below, APHIS has determined that the information at issue should be released in full to the Humane Society." USDA March Letter, at 1 (Ex. "D").

55.     USDA also indicated that HSUS "has not appealed APHIS' previous decision to withhold information including the signatures of licensees, the names of individuals other than the license holders, and any Social Security numbers under FOIA exemption 6, 5 U.S.C. § 552(b)(6). USDA March Letter, at 1 (Ex. "D"). USDA stated further that "[t]he agency will continue to withhold this information from release."

56.     Like the USDA November Letter, the USDA March Letter did not enclose USDA's original decisions to withhold the information as exempt. Nor did the March Letter enclose the documents submitted in connection with HSUS' administrative appeals of those decisions.

## The Requirements of Executive Order 12,600

57.     The purpose of Executive Order 12,600 is "to provide predisclosure notification procedures under the Freedom of Information Act concerning confidential commercial

information, and to make existing agency notification provisions more uniform." Executive

Order 12600 of June 23, 1987 ("E.O. 12,600").

58.     Section 1 of E.O. 12,600 requires, *inter alia*, the head of each Executive

department and agency subject to FOIA to

> establish procedures to notify submitters of records containing
> confidential commercial information as described in section 3 of
> this Order, when those records are requested under the Freedom of
> Information Act (FOIA), 5 U.S.C. 552, as amended, *if after
> reviewing the request, the responsive records, and any appeal by
> the requester, the department or agency determines that it may be
> required to disclose the records.* Such notice requires that an
> agency use good-faith efforts to advise submitters of confidential
> commercial information of the procedures established under this
> Order.

E.O. 12,600 § 1 (emphasis added).

59.     Section 3 of E.O. 12,600 defines "confidential commercial information" to mean

"records provided to the government by a submitter that arguably contain material exempt from

release under Exemption 4 of the Freedom of Information Act, 5 U.S.C. 552(b)(4), because

disclosure could reasonably be expected to cause substantial competitive harm." E.O. 12,600 §

3.

60.     Section 4 of E.O. 12,600 provides that

> When notification is made pursuant to section 1, each agency's
> procedures shall, to the extent permitted by law, afford the
> submitter a reasonable period of time in which the submitter or its
> designee may object to the disclosure of any specified portion of
> the information and to state all grounds upon which disclosure is
> opposed.

E.O. 12,600 § 4  (emphasis added).

61.     Section 5 of E.O. 12,600 requires each agency to

> give careful consideration to all such specified grounds for
> nondisclosure prior to making an administrative determination of

the issue. In all instances when the agency determines to disclose the requested records, its procedures shall provide that the agency give the submitter a written statement briefly explaining why the submitter's objections are not sustained. Such statement shall, to the extent permitted by law, be provided a reasonable number of days prior to a specified disclosure date.

62.     Section 6 of E.O. 12,600 requires that

Whenever a FOIA requester brings suit seeking to compel disclosure of confidential commercial information, each agency's procedures shall require that the submitter be promptly notified.

## USDA'S FOIA REGULATIONS

63.     USDA has adopted regulations setting forth procedures for responding to FOIA requests.

64.     For example, 7 C.F.R. § 1.12 sets forth the procedures USDA must follow in initially responding to a FOIA request. Under Section 1.12, USDA must provide notice and an opportunity to comment to a submitter of information in at least two circumstances. The first is "when, in the course of responding to a FOIA request, an agency cannot readily determine whether the information obtained from a person is privileged or confidential business information" exempt from disclosure. 7 C.F.R. § 1.12. The second is to provide an opportunity to administratively "object to any decision to disclose the information." *Id.*

65.     Section 1.12 also requires as follows:

If a request (including a subpoena duces tecum as described in 1.215) is received in USDA for information that has been submitted by a business, the agency shall: (a) Provide the business information submitter with prompt notification of a request for that information (unless it is readily determined by the agency that the information requested should not be disclosed or, on the other hand, that the information is not exempt by law from disclosure). Afford business information submitter reasonable time in which to object to the disclosure of any specified portion of the information. The submitter must explain fully all grounds upon which disclosure is opposed. For example, if the submitter maintains that

17

disclosure is likely to cause substantial harm to its competitive position, the submitter must explain item-by-item why disclosure would cause such harm. Information provided by a business submitter pursuant to this paragraph may itself be subject to disclosure under FOIA; (b) Notify the requester of the need to inform the submitter of a request for submitted business information; (c) Determine whether the requested records are exempt from disclosure or must be released; (d) Provide business information submitters with notice of any determination to disclose such records prior to the disclosure date, in order that the matter may be considered for possible judicial intervention; and (e) Notify business information submitters promptly of all instances in which FOIA requesters bring suit seeking to compel disclosure of submitted information.

7 C.F.R. § 1.12.

### The USDA November Letter Did Not Comply with E.O. 12,600

66.     The USDA November Letter was the first notice provided by USDA to plaintiffs Jurewicz and Hunte, as well as USDA-licensed members of plaintiff MPBA, regarding HSUS' FOIA requests. The notice did not comply with the requirements of E.O. 12,600 in several respects.

67.     For example, E.O. 12,600 requires the agency to notify submitters of records containing confidential commerical information "if after reviewing the request, the responsive records, and any appeal by the requester, the department or agency *determines* that it *may be required* to disclose the records" (E.O. 12,600 § 1 (emphasis added)), *i.e.*, not only after an actual "decision to disclose the information" is made as required by 7 C.F.R. § 1.12. *Compare* E.O. 12,600 § 1 to 7 C.F.R. § 1.12.

68.     The USDA November Letter did not give the required notice that USDA had "determined that it may be required to disclose the records" requested by HSUS. In fact, it said the exact opposite, namely, that the information may not be disclosed because "[a] closer review of the Form 7003 reveals that they [sic] may contain [confidential businss information] that was

18

provided by licensed breeders and dealers." USDA November Letter, at 1 (Ex. "C"). The USDA November Letter was misleading and did not provide adequate and proper notice for which the submitters could provide effective comments, *i.e.,* the fact that USDA had already "determined that it may be required to disclose the records."

69.     Moreover, because USDA had obviously reversed its original decisions to withhold the information and "determined that it may be required to disclose the records," presumably that reversal was based on arguments advanced by HSUS in its administrative appeal(s). However, as noted above, USDA did not provide (or even disclose) (1) its original decisions to withhold the information or (2) the record from (or even the existence of) HSUS' administrative appeal(s). Accordingly, breeders and dealers had no notice or opportunity to comment on HSUS's arguments or USDA's conclusion(s) that "it may be required to disclose the records."

70.     Regardless of whether USDA reversed its original decisions, USDA was required under E.O. 12,600 to disclose those decisions as well as the record (and any results) from HSUS' administrative appeal with the USDA November Letter. Because it did not, dealers were not provided adequate and proper notice or an opportunity to comment on HSUS' arguments that the information was not exempt from disclosure.

71.     In addition, USDA did not provide prompt notice of HSUS' FOIA suit against USDA to dealers and breeders (including plaintiffs Jurewicz, Hunte, and USDA-licensed MPBA memters), as required by Section 6 of E.O. 12,600.

72.     USDA also did not provide "a reasonable period of time" for dealers and breeders (including plaintiffs Jurewicz, Hunte, and USDA-licensed MPBA memters) to adequately respond to the USDA November Letter, as required by Section 4 of E.O. 12,600.

19

**USDA'S November Letter Did Not Comply with Its Own FOIA Regulations**

73.    USDA's November Letter failed to comply with the procedures in its own FOIA regulations in several respects.

74.    For example, USDA indicated, as a premise for its November letter, that it was required to provide submitters of business information "with an opportunity to object to any decision to disclose the information." USDA November Letter, at 1 (Ex. "C") (citing 7 C.F.R. § 1.12).   However, USDA did not enclose (or even disclose) its "decision to disclose the information." Nor did USDA enclose (or even disclose) (1) its original decisions withholding the requested information, (2) or the record from (or even the existence of) HSUS' administrative appeal(s).

75.    Preumably, if USDA had made a "decision to disclose the information," that decision was based on arguments advanced by HSUS in its administrative appeal(s). However, instead of providing breeders and dealers like Ms. Jurewicz, Hunte, and USDA-licensed members of MPBA with proper and adequate notice and opportunity to comment on HSUS's arguments and USDA's conclusion(s), HSUS simply asked them to "take a shot in the dark" and provide their position on whether they believed the information was confidential business information exempt from disclsoure under FOIA Exemption 4. *See* USDA November Letter, at 1 (Ex. "C") (citing 7 C.F.R. § 1.12).

76.    In addition, the USDA November Letter only informed dealers and breeders of USDA's belief that the withheld records may contain confidential business information under FOIA Exemption 4. USDA November Letter, at 1 (Ex. "C"). Indeed, USDA only asked dealers and breeders for their "position on whether the enclosed form or forms contain confidential information" exempt from disclosure under FOIA Exemption 4. *Id.*

77.     The USDA November Letter made no mention whatsoever of the application of Exemption 6, or of USDA's position in responding to HSUS' FOIA request that the information in dispute was exempt from disclosure under FOIA Exemption 6, notwithstanding the USDA's April 7, 2010 decision with respect to HSUS' Dealer Request which concluded that the withheld financial information was protected from disclosure only under FOIA Exemption 6.  *See* HSUS Complaint ¶ 27 (Ex. "B").  According to HSUS, it challenged this decision in its administrative appeal.  *See* HSUS Complaint ¶ 30 (Ex. "B").

78.     Further, to the extent USDA reversed its April 7 decision, it never notified plaintiff Hunte as it was required to under 7 C.F.R. § 1.12.  Presumably, any reversal of this April 7 decision would be based on arguments advanced by HSUS in its administrative appeal that FOIA Exemption 6 does not cover the financial information provided by dealers in APHIS Form 7003.

79.     Regardless of whether USDA reversed any of its decisions and determined that the records should be disclosed, USDA was required under 7 C.F.R.§ 1.12 to disclose those decisions as well as the record (and any results) from HSUS' administrative appeal with the USDA November Letter.  Because it did not, breeders and dealers were not provided proper and adequate notice or an adequate opportunity to comment on HSUS' arguments.

80.     In addition, USDA did not provide prompt notice of HSUS' FOIA suit against USDA to dealers and breeders (including plaintiffs Jurewicz, Hunte, and USDA-licensed MPBA memters), as required by 7 C.F.R. § 1.12(e).

81.     To the extent USDA had also made a decision to disclose the information, USDA did not provide "reasonable time" for dealers and breeders (including plaintiffs Jurewicz, Hunte,

and USDA-licensed MPBA members) to adequately respond to the USDA November Letter, as required by 7 C.F.R. § 1.12(a).

**The USDA March Letter Did Not Comply With USDA's FOIA Regulations**

82.    The USDA March Letter also did not comply with USDA's FOIA regulations in several respects.

83.    For example, as explained above, USDA's FOIA regulations require it to provide submitters of information an opportunity to administratively "object to any decision to disclose the information." 7 C.F.R. § 1.12. USDA's March Letter did not provide plaintiffs an opportunity to administratively object to USDA's decision to dislcose the records. Instead, it stated that USDA was planning to release the information to HSUS on April 4, 2011, unless it received notice that dealers and/or breeders were intending to seek judicial intervention to prevent the disclosure of the information. USDA March Letter, at 1 (Ex. "D").

**USDA's Decision to Release the Records Did Not
Adequately Address The Submitters Comments, Relied on Information Without Providing
Submitters An Opportunity to Comment, and Is Not Supported By The Record**

84.    The USDA March Letter concluded that the information requested was not exempt from disclosure under FOIA Exemption 4. In reaching this conclusion, USDA relied on information outside of the administrative record.

85.    For example, according to USDA's decision, several licensees submitted comments arguing that a competitor could use the number of dogs bought and sold along with the total revenue information disclosed on APHIS Form 7003 to calculate the price per dog that the dealer or breeder received, thereby permitting a competitor to price its dogs at a slightly lower level. In other words, public disclosure of the information would provide competitors with sensitive, confidential pricing information. In rejecting this argument, USDA relied on the

opinion of the American Kennel Club to solicit its views as to whether the redacted information is confidential business information and exempt from disclosure under FOIA Exemption 4:

> In an effort to determine whether a competitor could calculate price per dog, APHIS contacted the American Kennel Club to get information on the number of different types of breeds that dealers buy and sell. Based on information received from the American Kennel Club, APHIS estimates that the majority of the dealers buy and sell four or more different breeds of dogs. There are simply too many variables to permit a competitor to determine the exact price per dog that a licensee received.

*See* USDA Letter Decision, at 5 (Ex. "D").

86.    Plaintiffs were never notified of USDA's contact with the AKC nor given an opportunity to comment on AKC's opinions. In fact, other than USDA's recitation of its purported discussions with AKC in USDA's March Letter, plaintiffs do not know the substance of AKC's alleged opinions. USDA's failure to provide any notice of its purported discussions with AKC as well as USDA's potential reliance on those opinions foreclosed plaintiffs from providing any comment on same.

87.    Additionally, USDA's decision did not adequately respond to all arguments advanced by commenters. According to USDA, several commenters argued that the information at issue was protected from disclosure pursuant to FOIA Exemption 6, which protects from disclosure certain private information of the submitter. USDA March Letter, at 3-4 (Ex. "D"). Remarkably, despite the fact that USDA had originally concluded to withhold at least some of the information under FOIA Exemption 6, USDA refused to articulate any reason why the information was not exempt under FOIA Exemption 6.

88.    In fact, USDA arbitrarily chose to limit its analysis to FOIA Exemption 4. *See Id.* at 4 (stating that commenters' arguments under FOIA Exemption 6 "have no bearing on this analysis under Exemption 4 of the FOIA.") *Id.* USDA indicated that:

> Other submitters also provided arguments about their privacy
> rights and raised concerns about the requester's reasons for seeking
> the information. Others raised concerns about their physical safety
> because they view the requester and other organizations as threats,
> and they are concerned about harassment.    Although APHIS
> considered these concerns in its analysis, *these concerns are not*
> *appropriate for consideration in the context of an Exemption 4*
> *submitter notice process.*

*Id.* (emphasis added).

89.    Further, USDA treated dealers and breeders in the same manner in its decision.
However, USDA was required to, at a minimum, analyze whether dealer information was
exempt from disclosure separate and apart from whether breeder information was exempt from
disclosure.

90.    Moreover, USDA was required to analyze on a breeder-by-breeder and a dealer-
by-dealer basis whether each breeder and each dealer's information was confidential and/or
private information.  Without such separate analysis and treatment, USDA could not make a
determination that the specific information submitted by each such dealer or breeder was not
confidential and/or private, or not exempt under FOIA.

91.    In addition, in its March Letter, USDA concluded that the price information
required to be disclosed on APHIS Form 7003 "would be stale information" and therefore not
protected from disclosure under FOIA Exemption 4 because "Form 7003 asks for the previous
business year's information and does not necessarily reflect on the current prices being obtained
by the licensees with a new set of animals." USDA March Letter, at 5 (Ex. "D"). USDA also
concluded that "[i]nformation about a dealer's business in previous years is not necessarily
indicative of the current business." *Id.*

92.    These conclusions are unsupported by, and/or are contrary to, the administrative
record.  For example, according to HSUS, its Dealer Request asks for "'copies of *all* records

related to license renewal applications'" for various dealers and its Breeder Request asks for "'copies of all applications for license and annual reports (APHIS Form 7003) ... submitted by all dog breeders and dealers in the State of Missouri *for the most recent year available*.'" HSUS Complaint ¶¶ 21, 23 (Ex. "B"). USDA's decision did not adequately explain why information submitted by dealers and breeders days or even weeks before HSUS' FOIA requests (which would be responsive) is stale information that would not cause competitive harm to dealers and/or breeders if publicly released.

93.     Moreover, to the extent that HSUS or anyone else (*e.g.*, a competitor) were to seek the information on a yearly basis, they would obtain a track record of the dealer's business that not only would be "indicative of the current business" but predictive of the dealer's current and future business.

### USDA's Agreement to Withhold Disclosure Until This Lawsuit is Finally Resolved

94.     The USDA November Letter stated that the agency was planning to release the information to HSUS on April 4, 2011, unless it received notice that dealers and/or breeders were intending to seek judicial intervention to prevent the disclosure of the information. USDA March Letter, at 1 (Ex. "D").

95.     On or about Tuesday, March 29, 2011, counsel for the MPBA and Hunte sent an e-mail to the Department of Justice (DOJ) attorney responsible for defending the USDA in HSUS' FOIA lawsuit. A true and correct copy of the e-mail is attached hereto as Exhibit "E." The e-mail informed DOJ of the intent of breeders and dealers to seek judicial review of USDA's March Letter, and requested USDA to agree that it would not voluntarily disclose any of the records in dispute until after judicial review. Counsel also requested USDA's assurances that

licensees were not obligated to move for a TRO or preliminary injunctive relief on or before April 1, 2011 to obtain an order prohibiting USDA from disclosing the records.

96.     On or about March 30, 2011, DOJ counsel for USDA responded to counsel's e-mail by forwarding a letter she had sent to HSUS. A true and correct copy of the letter is attached as Exhibit "F." In the letter, counsel on behalf of USDA indicated that, in light of receiving notification from licensees that they intended to challenge USDA's March Letter to release the records, "USDA will not release the disputed information until this litigation or any other litigation initiated on behalf of the licensees is fully resolved in favor of release." *See* Exhibit "I."

## COUNT I

### Violation of APA
### (Ms. Jurewicz)

97.     Ms. Jurewicz repeats and re-alleges paragraphs 1 through 96 as if fully set forth herein.

98.     USDA's decision to release the information at issue is arbitrary and capricious and/or otherwise contrary to law under Section 706 of the APA, 5 U.S.C. § 706 because, *inter alia*, USDA (a) did not comply with E.O. 12,600 in reaching the decision, (b) did not comply with its own FOIA regulations, (c) did not address and respond to each argument made by commenters for withholding the information, (d) relied on information outside of the administrative record, (e) did not otherwise provide sufficient notice and opportunity to comment to plaintiffs; and (f) reached conclusions and made determinations that are unsupported by, and/or are contrary to, the record.

## COUNT II

### Violation of APA
### (MPBA)

99.    MPBA repeats and re-alleges paragraphs 1 through 96 as if fully set forth herein.

100.    USDA's decision to release the information at issue is arbitrary and capricious and/or otherwise contrary to law under Section 706 of the APA, 5 U.S.C. § 706 because, *inter alia*, USDA (a) did not comply with E.O. 12,600 in reaching the decision, (b) did not comply with its own FOIA regulations, (c) did not address and respond to each argument made by commenters for withholding the information, (d) relied on information outside of the administrative record, (e) did not otherwise provide sufficient notice and opportunity to comment to plaintiffs; and (f) reached conclusions and made determinations that are unsupported by, and/or are contrary to, to the record.

## COUNT III

### Violation of APA
### (Hunte)

101.    Hunte repeats and re-alleges paragraphs 1 through 96 as if fully set forth herein.

102.    USDA's decision to release the information at issue is arbitrary and capricious and/or otherwise contrary to law under Section 706 of the APA, 5 U.S.C. § 706 because, *inter alia*, USDA (a) did not comply with E.O. 12,600 in reaching the decision, (b) did not comply with its own FOIA regulations, (c) did not address and respond to each argument made by commenters for withholding the information, (d) relied on information outside of the administrative record, (e) did not otherwise provide sufficient notice and opportunity to comment to plaintiffs; and (f) reached conclusions and made determinations that are unsupported by, and/or are contrary to, the record.

## Prayer for Relief

Wherefore, plaintiffs respectfully request the Court to:

(A)     Set aside USDA's decision to release the records; and

(B)     Remand this matter to USDA for adequate and proper notice, comment and decision by USDA;

(C)     Enter an Order ensuring that USDA will not release the disputed information unless this litigation or any other related litigation is fully resolved in favor of release; and

(D)     Such other and further relief as the Court deems just and equitable.

Dated:  April 11, 2011                  Respectfully submitted,

                                        *Ira Kasdan*

                                        Ira T. Kasdan (D.C. Bar # 292474)
                                        Laurence Lasoff (D.C. Bar # 367006)
                                        KELLEY DRYE & WARREN LLP
                                        3050 K Street, N.W., Suite 400
                                        Washington, D.C.  20007
                                        (202) 342-8400 (phone)
                                        (202) 342-8451 (facsimile)
                                        Email:  ikasdan@kelleydrye.com
                                                llasoff@kelleydrye.com

Franklin W. Losey                             *Counsel for Plaintiffs*
5248 Skyline Drive
Cold Spring, KY 41076
(859) 803-5293 (phone)
Email:  f.losey@insightbb.com

*Of Counsel for Plaintiff*
*Missouri Pet Breeders Association*